Curia, per

Richardson, J.
' Upon the first ground of the appeal, I have little to observe.
In the case of Thompson vs. Farr, Speers’s Rep. 93, this court very recently decided, that the question of undue influence being one of fact, belonged to the decision of the *265 jury. It is a question upon the imposition of a false will. And although the presiding Judge may also express his opinion upon the facts, while he avoids all undue control of the jury, yet such expression ,of his opinion, or his silence on that head, must be left to his own sound discretion. The complexity of the facts, the character of the case, or even the management of it, in the argument of counsel, may render such aid necessary or superfluous.
The particular case afforded a good illustration of the last position. One great, if not the chief, stress of the argument, was upon the supposed influence unduly practiced upon Abner Teague; but without any material difference in the meaning of undue influence. The court was, therefore, left with nothing material to define, expound or enforce on that head. The court also avoided giving any opinion upon the conclusion to be drawn from the particular evidence before the jury. But not because the court might not have done so, legally or judicially.
Still, let it be observed, as noticed by the appealing counsel, that the Judge was very unwell, and-did confine his charge to its bare essentials. But he expounded fully what sound mind means, and added his own opinion, that the testator’s mind was sound, and his memory sane. So much the case still required. The decision of the appeal must, then, turn upon the second ground taken.
2d. That there was no proof of mental incapacity in the testator to make a last will; nor'of undue influence practiced upon his disposing mind.
Upon both of these subjects of judicial investigation, which have lately become topics of great interest, as well as upon the meaning of the disposing mind of testators, and the application of undue influence to that disposition of mind, this court very recently took the case of Thompson vs. Farr, Reported in 1st Speer’s p. 93, for a proper opportunity, as that case was there finally disposed of by the second verdict, to express its opinion, to wit:
1st. Upon “the reasonable mind and sound memory” essential to the civil individual right of making any last will.
2d. Upon the necessity of a free and disposing mind, *266 exempt from any undue or improper influence, in order to render such will valid and good in law ; and, finally, upon the particular bearing and stress of the supposed undue influence. Whatever shape it may assume upon the peculiar disposing mind or will of the testator, in contradistinction to the due and common influence, which one mind, or a friend, may rightfully have and exercise over another, and to the right of every man to take advice and counsel, before he finally and fully decides upon his own course of conduct. In the case before the court, this, distinction on the one side, and the converse on the other, as each assumed the facts to indicate, was at the bottom of the argument.
When the testator’s mind is not proved to be unsound, and there is no satisfactory proof that he was unfairly influenced to adopt the particular will, courts can no more set it aside than his contract. But both contracts and wills being subject to frauds, are equally open to such judicial investigation, and may be set aside for fraudulent imposition, circumvention or undue influence.
But as this case is again to be committed to the jury, the court will do little more than refer to the case already noticed, to those of Hobby vs. Bobo, MS. Dec. 5 vol. 440; Tompkins vs. Tompkins, 1 Bail. 92; and Tide vs. Tide, 2 Brev. 403, for the principles of its present decision, and would send the case back with as little prejudice as possible.
First, then, we perceive in the evidence very little indeed to shew that the testator’s mind was unsound, and that little was opposed to good evidence, especially by the subscribing witnesses, that it was still competent for all the purposes of a last will. Upon this question, if we may judge from the opinions of several witnesses, who gave very unsatisfactory reasons in their support, it is probable the verdict turned.
But we cannot see a man stultified, and thereupon disfranchised of an important privilege, and property trans ferred, as a consequence, upon most unconvincing testimony of little more than bare opinions, and not give a chance for reconsideration bv the same tribunal.
*267 It is the incidental privilege of courts of justice to reconsider, or to have reconsidered, their possible errors. But as from the constitution of juries, that tribunal being temporary, they cannot, themselves, reconsider, their privilege, like that of Circuit Judges, has been placed in other hands. Still, it is no less their privilege on that account. It is at the foundation, therefore, of all new trials by a jury, that they would probably render a different verdict. But they are always granted idthout prejudice to their rendering the same verdict.
Jealous views upon this popular subject, arise from the possibility that the privilege may be abused, or from a partial or prejudiced consideration of our whole judicial system. And yet, experience points out plainly, that the privilege of reconsideration must be preserved somewhere. Jury trials, more rarely, yet sometimes, require it. In, perhaps, nine out of ten cases, it is the Judge, not the jury, that is corrected.
But secondly, the jury may have decided, that Abner Teague, although having a sufficiently sound mind, may have had his disposition to make a will unfairly influenced, so as to turn him from his own free will, which would amount to undue influence or a fraud.
But the court cannot perceive in the evidence, on this branch of the second ground taken for a new trial, any proof that can be fairly weighed against the first conclusion, that Abner Teague possessed a reasonable mind and sane memory.
If fraud be the predicate of a verdict which would take away the important privilege of making a last will, and, consequently,, making much property pass to other hands, while it derogates from the character of the chief legatee, surely such fraud should be made to appear from more perspicuous indices of undue influence or conduct; and such influence should be brought to bear against the true disposing mind of the testator in the matter and subject of his last will.
This is the point of attack and defence. It is not enough that there has been a general influence merely, which might, or might not, have been used fraudulently *268 or unduly, and to which general influence so many men are habitually subject.
Power does not imply an undue application of it, nor individual confidence its own perversion. Such- abuses are to be first proved, and their undue influence be made to appear from evidence; which is what we think the case wants, in order to be supported on this last ground. Therefore, upon neither the ground of imbecility of understanding, nor that of undue influence practiced upon Abner Teague, can the verdict, setting aside his last will, be supported ; and a new trial is ordered unanimously.
O’Neall, and Evans, JJ. concurred.